**RESNICK LAW GROUP, PLLC.**
Mark R. Resnick, State Bar No. 19272
100 North Stone Avenue, Suite 801
Tucson, Arizona 85701
Telephone: (520) 903-9938
Facsimile: (520) 882- 8622
resnicklawfirm@gmail.com
Attorney for Defendant David Odean McIntosh

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | ) |
| Plaintiff, | ) **Case No.: 4:18-CR-02216-RCC (LCK)**-3 |
| vs. | ) **SENTENCING MEMORANDUM** |
| David Odean McIntosh, | ) |
| Defendant. | ) |

COMES NOW Defendant, David Odean McIntosh**,** by and through counsel undersigned, and hereby submits his memorandum in support of sentencing.

**OFFENSE LEVEL**

The defendant believes the appropriate offense level is 27.

The probation department sets the loss and culpability for the defendant's conduct at $2,533,118. 00. The defendant objects as this is an improper computation. The defendant was found responsible for the losses of LG, NK and LR.   He was not found guilty by a jury for any other losses.

While the probation department spoke to several victims alleged to have been part of this same scheme, the only connection between the alleged non-trial victims they contacted and the

defendant is an email address that the government's own witness stated did not belong to the defendant. The government's witness stated that this email belonged to him. Further, that government witness made clear that the defendant did not know or work with codefendant BATTS, which calls into question the addition of monies attributable to that codefendant.

There is no contact alleged between the defendant and any of the non-trial victims listed in the presence report.

## **COMPUTATION OF DAMAGES AND OFFENSE LEVEL**

LG

LG was communicated to by BATTS, who the governments witness stated at trial, did not work with the defendant. LG's total loss was $88,000. 00.

NK

NK's total loss was $620,000.00.   However, none of that money could be traced to the defendant. Nonetheless, the defendant was found guilty of the count involving NK.   However, defendant points out that only $40,000 was sent to the defendant. (Discussed later)

LR

LR's total loss was $77,000.00.

Accordingly, the total loss to the victims for whom the defendant was found guilty is $785,000.00.   That is the total loss attributable to the conduct for which the defendant was found responsible by the jury. The appropriate additional offense level addition pursuant to §2B1.1(b)(1) is subsection H, adding 14 points, not 16 as stated in the PSR.

…

…

Accordingly, the Base offense level is 7 plus 14:   21 ( §2S1.1)

Convicted of § 1956: add 2.                        +2

Mass Marketing (§ 2B1.1(a)(1))                    +2

Government Agency Misrepresentation
(§ 2B1.1(b)(9)(A)                                  +2

Substantial part of offense outside US              0

The defendant objects to the "out of the United States" characterization. The only portion of this scheme which occurs outside the United States are phone calls and emails. The actual nuts and bolts of the scheme involved various people inside the United States to pick up money, reroute money, buy goods and send goods and transfer monies back to Jamaica. Accordingly, most of the scheme takes place within the United States. It is initiated and completed outside, but the defendant maintains this is not a substantial part of the offense.

**Subtotal:**   27

**<u>Further Adjustments:</u>**

In determining the applicable offense level, the judge may adjust the defendant's offense level based on: (1) the defendant's role in the offense; (2) the defendant's role in any obstructive conduct; (3) the relationship between the counts of which the defendant was convicted; (4) the defendant's acceptance of responsibility for the offense; and (5) the level of victim harm. *See*, USSG § 1B 1. 1.

In determining the applicable offense level, the judge may adjust the defendant's offense level based on: (1) the defendant's role in the offense; (2) the defendant's role in any obstructive conduct; (3) the relationship between the counts of which the defendant was convicted; (4) the defendant's acceptance of responsibility for the offense; and (5) the level of victim harm. *See*, USSG § 1B 1. 1.

**Defendant's Role:**

It is difficult to determine the defendant's role, as this would require a full knowledge of the hierarchy and sprawling nature of the interlocking conspiracies being managed by Mr. McCoon, who the government has maintained from the beginning was the mastermind of this (and other) similar schemes. Certainly, the defendant bought and sold leads lists, but he was not making calls, he was not manufacturing emails, and the extent of his conduct in this matter (beyond the debunked and fantastic testimony of Mr. Malcolm) was limited to his receiving monies while in Hawaii. Accordingly, the defendant believes that a downward adjustment for his role in the offense is appropriate. The defendant believes he should receive a 2-point decrease for being a minor participant.

**Acceptance of Responsibility:**

The defendant believes that he should receive an adjustment for acceptance of responsibility. The defendant engaged in two free talks where he provided information that was helpful to the government. the defendant was always willing to accept some responsibility for his role in the offenses, he simply did not believe that everything the government claimed was his responsibility should be laid at his door. However, simply because he went to trial did not mean he would not accept responsibility for his role in the offense. Accordingly, a 2-point decrease is appropriate.

Accordingly, the defendant believes that the appropriate adjusted offense level is: 23.

**CRIMINAL HISTORY**

The defendant agrees that he is a criminal history category I. Accordingly, the appropriate sentencing range for this defendant is: 46-57 months.

## **DOWNWARD DEPARTURES**

Judges have discretion to depart from the guideline range upon a finding that the case includes aggravating or mitigating circumstance "of any kind… Not adequately taken into consideration" by the sentencing commission. Any such See, US v. Booker, 543 U.S. 220, 258 – 59 (2005).

### **EXPOSED TO DOMESTIC VIOLENCE AS CHILD**

In his early years, the defendant was exposed to a great deal of physical, psychological and sexual abuse.   As was typical of children in his socioeconomic circumstances, he did not get treatment.    Even as an adult, the economic conditions associated with growing up in a comparatively poor nation did not lend themselves to creative or non-violent problem solving.

Defendant asked this court to consider a downward departure based upon this childhood abuse. *See*, *United States v. Walter*, 256 F.3d 891 (9th Cir., 2001) (where beatings and sexual abuse were present at childhood, these types of extraordinary circumstances justify consideration of the psychological effects and assist in establishing a diminished capacity); *see also*, *United States v. Roe*, 976 F.2d 1216 (9th Cir., 1992) (a court has discretion to depart downward where defendant has suffered sexual abuse as a child); *United States v. Rivera*, 192 F.3d 81, 84 (2d. Cir., 1999) ("it seems beyond question that abuse suffered during childhood – at some level of severity – can impair a person's mental and emotional conditions… In extraordinary circumstances… District courts may properly grant a downward departure on the ground that his childhood abuse can cause mental and emotional conditions that contribute to a defendant's commission of an offense").

…
…
…
…

**EXCELLENT EMPLOYMENY HISTORY**

The defendant did not, as the government contends furnish his lifestyle through scamming. He owned a recording studio and was attempting to create a name for himself as a producer of young talent.   He daftly and mistakenly believed that if he only sold the leads lists to others, he would not be committing a crime.   Certainly, if he thought he had been, he would not have come to the United States regularly.   The defendant maintained an excellent employment history, and provided as best he can for his family and children. *See*, *United States v. Higgins*, 967 F.2d 841 (3rd Cir., 1992) (young age and stable employment will justify a downward departure): *see also*, *United States v. Big Crow* , 898 F.2d 1326, 1331 – 32 (8th Cir., 1990).

**TOTALITY OF THE CIRCUMSTANCES**

The totality of the circumstances in this matter reveals a young man who made a very bad decision in an effort to provide for his family.    The defendant's youngest child suffers from sickle-cell, and treatment options in Jamaica are very limited.

**<u>CONCLUSION</u>**

While there is no way that this conviction will not have a grave effect upon his family, the defendant is committed to continue providing for them by any legal means necessary and proper. The defendant has accepted responsibility for this matter and admitted as much to the government. His only reason for going to trial was his belief that he would languish in jail until Mr. McCoon's presence could be secured. To the defendant's knowledge, it still has not.

In short, the defendant believes that given his very difficult upbringing and the efforts that he made to provide for his family, coupled with his immaturity and age, which led him to cross the line

into illegality in this matter, the court consider an appropriate variance which takes into account all of the defendant's circumstances.

RESPECTFULLY SUBMITTED this 6th day of August, 2022.

s/ Mark R. Resnick
MARK R. RESNICK

Certificate of Service:   I certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Jonathan Granoff (USAAZ)
Assistant United States Attorney
United States Attorney's Office
405 West Congress Street, Suite 4800
Tucson, Arizona 85701